UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

98 AUG 12 PM 2:38

U.S. DISTRICT COURT
N.O. OF ALABAMA

ALVIN RAY POE, et al.,           )
                                 )
        Plaintiffs,              )
                                 )
vs.                              )     Civil Action No. 96-S-1332-NE
                                 )
PRC INC., and PRC                )
ENGINEERING SYSTEMS, INC.,       )                        cn
                                 )      ENTERED
        Defendants.              )
                                         AUG 12 1998

## MEMORANDUM OPINION

Nineteen plaintiffs[1] filed the instant action against PRC,

Inc., a Delaware corporation, and its subsidiary, PRC Engineering

Systems, Inc., a Virginia corporation, asserting state law claims

for fraudulent misrepresentation and violations of the Fair Labor

Standards Act of 1938, 29 U.S.C. §§ 201 et seq.  The action now is

before the court on defendants' motion for summary judgment.  Upon

consideration  of  the  pleadings,  motion,  and  evidentiary

submissions, the court concludes the motion is due to be granted in

part, and denied in part.

### I.   SUMMARY OF FACTS

Acting through its subsidiary, PRC Engineering Systems, Inc.,

PRC, Inc. contracted with the Tennessee Valley Authority ("TVA") to

provide engineering support services for TVA's Browns Ferry nuclear

power generation facility in Limestone County, Alabama.   The

purpose of the contract was to assist with the preparation of

---

[1]The plaintiffs are Alvin Ray Poe, David A. Yerdon, Michael J. Hein, Dwight
Kilgore, Clifford Long, Ralph Chackal, Gerald S. Patterson, William J. Matthews,
Claude A. Partlow, Allen Kinworthy, David J. Lorhman, Robert D. Eckard, Jr.,
Carol L. Harrison, Larry G. Massey, Jamie Mintz, Robert C. Keener, John H.
McCutcheon, Robert L. Smith, and David H. Thigpen.

58

federal licensing documentation required by the Nuclear Regulatory
Commission.

Plaintiffs allegedly were induced to give up salaried
positions with other employers to accept lower-paying jobs with
PRC, to assist PRC with its performance of the TVA contract. They
contend they did so because they were promised "time and a half"
compensation for overtime work—a benefit which apparently rendered
PRC's offer superior to their prior employment. Plaintiffs began
work on various dates during 1993 and 1994.[2]

Plaintiffs were paid time and a half for hours worked in
excess of forty hours a week until April 20, 1994. On that date,
PRC stopped paying overtime wages to plaintiffs, alleging that TVA
refused to pay overtime rates for so-called "exempt" employees.
(Defendants' Exhibit A, Griffin Affidavit ¶ 5.) The term "exempt"
refers to employees whose positions are not covered by the overtime
provisions of the Fair Labor Standards Act.

Plaintiffs commenced this action on April 17, 1996, asserting
two claims:  fraudulent misrepresentation; and, violation of the
Fair Labor Standards Act. They seek unpaid overtime compensation,
interest on those wages, "and an equal amount of compensatory
damages for said unpaid overtime wages for Defendants' willful
failure to pay the overtime wages, attorneys fees, and all other
legal equitable relief" to which they are entitled.  (Second
Amended Complaint ¶ 11 (Doc. No. 10).)

---

[2]The precise days on which each plaintiff began his or her employment with
PRC are not readily discernible from the record, nor are they pertinent to the
court's summary judgment analysis.

2

## II.  DISCUSSION

### A.  Fair Labor Standards Act Claim

As a general rule, the Fair Labor Standards Act requires that employees be compensated at a rate not less than one and one-half times their regular rate for all overtime hours.   29 U.S.C. §207(a)(1).   The Act further defines "overtime" as employment in excess of 40 hours in a single workweek.   *Id.*   That overtime provision does not apply, however, to "any employee employed in a bona fide executive, administrative, or professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary)."  29 U.S.C. § 213(a)(1).

Fair Labor Standards Act exemptions are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."  *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).   Further, it is the employer in a Fair Labor Standards Act case that bears the ultimate burden of establishing that its employees fall within the exemption.   *See Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1070 (1st Cir. 1995).

Defendants contend plaintiffs are "exempt" from the overtime provisions of the FLSA because they were "employed in a bonafide ... administrative, or professional capacity."   29 U.S.C. § 213(a)(1).   The statute does not define those terms.   As a consequence, the court must rely upon regulations promulgated by

3

the Secretary of Labor to determine whether a particular employee is exempt from the Act's overtime provisions.  Initially, then, defendants' motion prompts this inquiry:  are plaintiffs employed in either an administrative or professional capacity?

**1.    Administrative or Professional Employees**

The regulations outline both a "short" and a "long" test for determining whether an employee qualifies for one of the exemptions.  The short test is used when an employee is paid more than $250 per week.  *See* 29 C.F.R. § 541.2(e)(2).  No party disputes that all plaintiffs were paid in excess of that amount.  Thus, the "short test" governs the instant case.

To differing degrees, both the administrative and professional exemptions require defendants to demonstrate that plaintiffs' primary duties included the "exercise of discretion and independent judgment."  For the administrative exemption, plaintiffs' primary work need only _include_ those elements.  29 C.F.R. § 541.2(e)(2). For the professional exemption, such work must _involve_ the "_consistent_ exercise of discretion and judgment."  29 C.F.R. § 541.315(a)(emphasis supplied).[3]

**a.    Work requiring the exercise of discretion and independent judgment**

Defendants contend that plaintiffs have each admitted their work assignments were performed independently, with only general

[3]The test also requires the employer to establish that the employees' primary duty consists of "[t]he performance of office or nonmanual work directly related to management policies or general business operations of [the] employer or [the] employer's customers." 29 C.F.R. § 541.2(a).  Because the court finds defendants' motion insufficient to demonstrate the absence of a genuine issue for trial as to the "discretion and independent judgment" element, the court need not consider defendants' arguments regarding the "directly related" element.

4

supervision.  (*See* Griffin Declaration ¶ 2; Defendants' Statement

of Undisputed Facts as to Eckard at 9, Hein at 7, Keener at 6-7,

Kinworthy at 4, Matthews at 6-7, Poe's at 6, Thigpen's at 8, and

Yerdon's at 9.)    Defendants further assert that plaintiffs

exercised discretion by "(1) evaluat[ing] components on the

installed plant equipment; (2) determin[ing] the function of the

plant equipment; (3) resolv[ing] inconsistencies in the safety or

quality-related classifications of components; and (4) providing

written recommendations and justifications for classifying the

components as safety-related, quality or non-quality-related."

(Defendants' Brief in Support at 21-22 (emphasis in original).)

As already noted, defendants bear the burden of proving that

plaintiffs are exempt from the overtime provisions of the Fair

Labor Standards Act.  On matters as to which they bear the ultimate

burden of proof, defendants must establish the absence of a genuine

issue of material fact in order to prevail on their motion.  Thus,

while defendants' assertions are persuasive, they ultimately do not

justify summary judgment, because they do not establish the absence

of a triable issue on whether plaintiffs are exempt.

Plaintiffs argue their jobs required only the exercise of

"skill," not discretion and independent judgment.

> Perhaps the most frequent cause of misapplication of
> the term "discretion and independent judgment" is the
> failure to distinguish it from the use of skill in
> various respects.  An employee who merely applies his
> knowledge in following prescribed procedures or
> determining which procedure to follow, or who determines
> whether specified standards are met or whether an object
> falls into one or another of a number of definite grades,

5

classes, or other categories, with or without the use of
testing or measuring devices, is not exercising
discretion and independent judgment within the meaning of
§ 541.2. This is true even if there is some leeway in
reaching a conclusion, as when an acceptable standard
includes a range or a tolerance above or below a specific
standard.

29 C.F.R. § 541.207(c)(1). The regulations provide an instructive

example.

A typical example of the application of skills and
procedures is ordinary inspection work of various kinds.
Inspectors normally perform specialized work along
standardized lines involving well-established techniques
and procedures which may have been cataloged and
described in manuals or other sources. Such inspectors
rely on techniques and skills acquired by special
training or experience. They may have some leeway in the
performance of their work but only within closely
prescribed limits. Employees of this type may make
recommendations on the basis of the information they
develop in the course of their inspections (as for
example, to accept or reject an insurance risk or a
product manufactured to specifications), but these
recommendations are based on the development of the facts
as to whether there is conformity with the prescribed
standards. In such cases a decision to depart from the
prescribed standards or the permitted tolerance is
typically made by the inspector's superior. The
inspector is engaged in exercising skill rather than
discretion and independent judgment within the meaning of
the regulations in Subpart A of this part.

29 C.F.R. § 541.207(c)(2).

Plaintiffs present convincing evidence that the parameters of

their individual work assignments were strictly limited by TVA

procedures, and that their jobs did not require the exercise of

discretion or independent judgment. For example, Michael J. Hein

testified that PRC employees had no discretion to act outside

established TVA procedures.

6

Q.  And you are referring to the independence of
action, employees complete assignments
independently using established TVA procedures.  Do
you agree with that?

A.  Yes, we used procedures but they were not
independent.  We had no flexibility.

Q.  But, while you ...

A.  No evaluation, no ability to deviate from the
procedures to do anything on our own to make
independent conclusions.  We had a procedure that
we followed and it was technical.  I had to rely
upon my technical background.  But, the procedure
was very specific.  And we were to follow the
procedure.  If there was any questions, we would
ask our supervisor.

(Hein Deposition at 102-03.)  Plaintiff Dwight Kilgore offered

similar testimony.

Q.  I understand the importance of the procedures, Mr.
Kilgore.  But what I understand you are telling me
-- and if I'm wrong, please correct me -- that
basically you just follow a checklist for basically
everything that you did at the power plant.  And
there was never an occasion upon which you were
required to either make a decision, consider the
alternatives, or evaluate information based on your
prior technical or engineering background?

A.  That's true.  That's a true statement.

(Kilgore Deposition at 290-91.)  Other plaintiffs offered similar

testimony regarding the inflexible TVA procedures governing the

performance of work assignments.  See, e.g., Chackal Deposition at

287-89 (only exercised discretion in "following prescribed

procedures and to determine whether specific standards were met");

Eckard Deposition at 258-59 (exercised no discretion because he

"had to use whatever books and procedures they had in place"); Hein

Deposition at 103 ("We were never independent.  If we had a

7

procedure, we followed it.  If we didn't, we were fired"); Keener Deposition at 68 (none of his work required him to exercise independent judgment or discretion); Kinworthy Deposition at 201-06 (testifying that all decisions were made based only upon guidelines and procedures dictated by TVA); Long Deposition at 336-38 (position with PRC did not require the exercise of independent judgment or discretionary decisionmaking).

Thus, defendants have failed to demonstrate the absence of a genuine issue regarding whether plaintiffs exercised discretion and independent judgment in performing their jobs.  Because that fact is material to defendants' primary defense, summary judgment is not appropriate.   Moreover, plaintiffs have effectively rebutted defendants' arguments with credible evidence demonstrating the existence of a triable issue.

**B.    Fraudulent Misrepresentation Claim**

Plaintiffs concede in brief that they can produce no evidence to support their state law claims for fraudulent misrepresentation. (Plaintiff's Opposition Brief at 1, n.1 (Doc. No. 56).) Accordingly, those claims are due to be dismissed.

### III.   CONCLUSION

For the foregoing reasons, defendants' motion is due to be granted in part, and denied in part.  An order consistent with this memorandum opinion will be entered contemporaneously herewith.

8

**DONE** this *12ᵗʰ* day of August, 1998.

_____
United States District Judge

9